IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN J. MORYKWAS, JR.,      )
                                  )
      Plaintiff,           )
                                  )
vs.                            )      CIVIL ACTION NO. 2:04cv872-CSC
                                  )              (WO)
MICHAEL W. WYNNE,         )
                                  )
      Defendant.     )

## MEMORANDUM OPINION

## I. INTRODUCTION

Plaintiff John J. Morykwas ("Morykwas") brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") against Michael W. Wynne, the Secretary of the Air Force.  Morykwas alleges that he was denied a position as a medical technologist because of his gender. The court has jurisdiction of this case pursuant to the jurisdictional grant in 42 U.S.C. § 2000e-5.  The parties have also consented to a United States Magistrate Judge rendering final decision in this case pursuant to 28 U.S.C. § 636(c).

Currently pending before the court is the defendant's motion for summary judgment and Morykwas' opposition to the motion.  After careful review of the motion, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the defendant's motion for summary judgment is due to be granted.

## II. SUMMARY JUDGMENT STANDARD

To survive a defendant's properly supported motion for summary judgment, the plaintiff is required to produce some evidence based on personal knowledge which would be admissible at trial supporting his constitutional claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Specifically, the plaintiff must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. A plaintiff's conjectural and conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all admissible evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, entry of summary judgment is appropriate. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v.*

*Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990); *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).   The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

## III. DISCUSSION

### A. FACTS

Viewed in the light most favorable to Morykwas and drawing all reasonable inferences in his favor, the following facts are treated as undisputed for the purposes of summary judgment.   During the Spring of 2003, a medical technologist position in the Laboratory Services Department at Maxwell Air Force Base became available.   (Doc. No. 21-4, Major Taylor's Affid., p. 2.)   Major Kathy Taylor ("Major Taylor"),[1] the Chief of Laboratory Services, provided a description of the medical technologist position to the Personnel Department.   (Doc. No. 21-3, Major Taylor's Dep., pp. 36-37; Doc. No. 24-6, Part 2, Ex. F-8, pp. 89-95.)   The job description indicated that the primary purpose of the position was "[t]o serve as medical technologist in the chemistry, toxicology, special chemistry, hematology, immuno-hematology, scrology, microbiology, coagulation, urinalysis and blood collection sections of the Laboratory Services Element," as well as being "[r]esponsible for solving complex problems, performing difficult specialized procedures, and providing professional technical expertise and consultation to health care providers."   (*Id.*, p. 90.)   A

---

[1] In 2003, Major Taylor's last name was "Cornelius." (Doc. No. 21-4, Attach. C, Major Taylor's Affid.)

vacancy announcement advertising the position was subsequently posted.  (Doc. No. 24-6, Part 2, Ex. F-9, pp. 97-100.)

Several individuals, including Morykwas, applied for the position on-line through a computerized website.   The Personnel Department determined that three applicants were eligible for the position and provided Major Taylor with the résumés of Morykwas, Rhonda Simmons ("Simmons"), and Joseph Cuenco ("Cuenco").  Coincidentally, both Morykwas and Simmons worked together in a laboratory at the Veterans Administration Hospital in Montgomery, Alabama.[2]

During interviews of each applicant on March 10, 2003, Major Taylor asked eight specific questions about the applicant's prior experience.  For example, Major Taylor asked, "What experience have you had in training Medical Laboratory Personnel and performing clinical in-services?"  (Doc. No. 24-6, Part 2, Ex. F-13, pp. 124, 127, 130.)  Mayor Taylor then applied numerical scores to each of the applicant's responses.  After totaling the results, Simmons received a score of 365, Cuenco received a score of 357, and Morykwas received a total score of 296.  (Doc. No. 24, Part 2, pp. 122-30.)  Major Taylor and the applicants also discussed the information included in their résumés, as well as any additional employment or educational history which was not specified in their on-line application.  During Cuenco's interview, Major Taylor learned that Cuenco was not qualified for the position because he did not meet the educational requirements.  (Doc. No. 21-3, Major Taylor's Dep., p. 67.)  At

---

[2] Morykwas trained Simmons for her job at the Veterans Administration Hospital. (Morykwas' Dep., p. 139.)

the conclusion of the interview process, Major Taylor offered Simmons the medical technologist position.

Upon hearing that Simmons was offered the job, Morykwas called Major Taylor and asked her why he was not selected for the position. (Doc. No. 21-2, Morykwas' Dep., p. 155.) Major Taylor told him that Simmons was chosen because she was more qualified. (*Id*.) Dissatisfied with Major Taylor's response, Morykwas contacted the Equal Employment Office ("EEO") and submitted an informal complaint, claiming that Major Taylor discriminated against him based upon his gender. (Doc. No. 21-2, Def's Ex. 7.) Because his informal complaint was not resolved to his satisfaction, Morykwas filed a formal discrimination complaint with the Secretary of the Air Force, alleging that his non-selection was due to his gender. Unsuccessful in that endeavor, on September 15, 2004, Morykwas filed this lawsuit. (Doc. No. 1.)

### B. Discrimination Based on Gender

Morykwas claims that the defendant denied him a position as a technical specialist based on his gender. In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against him. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To defeat the defendant's motion for summary judgment, Morykwas must establish a prima facie case of gender discrimination by at least one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent, (2) presenting evidence to satisfy the four-part circumstantial evidence

5

test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or (3) presenting statistical proof.[3]  *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

In opposing the defendant's motion for summary judgment, Morykwas points to one question during his interview with Major Taylor which he posits as direct evidence of discrimination.  Morykwas alleges that Major Taylor asked him "whether he could work under the direction of a female manager."  (Doc. No. 24-1, p. 12.)  Direct evidence of employment discrimination consists of statements by a person with control over the employment decision "sufficient to prove discrimination without inference or presumption." *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993) (citing *Carter,* 870 F.2d at 581-82).  The Eleventh Circuit has severely limited the type of language constituting direct evidence of discrimination. *See*, *e.g.*, *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 962 (11th Cir. 1997); *Burrell v. Bd. of Trs. of Ga Military Coll.*, 125 F.3d 1390, 1393-94 n.7 (11th Cir. 1997).   A plaintiff presents direct evidence of discrimination where "actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641-42 (11th Cir. 1998); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997).

---

[3] Morykwas has not presented any direct or statistical evidence supporting his claim of intentional discrimination.  Although he asserts that several women are in supervisory positions in the laboratory, he fails to present any statistical evidence as support for this argument, such as data indicating the number of male and female applicants for each position.  Major Taylor stated in her deposition that males were in a minority in supervisory positions in the laboratory at Maxwell Air Force Base.  (Major Taylor's Dep., p. 95.) But that fact standing alone is not sufficient to show intentional discrimination.

The first difficulty with the plaintiff's argument that the question constitutes direct evidence of gender discrimination is that any nexus between the question and Major Taylor's decision not to promote Morykwas is, at best, speculative. The question on its face is an inquiry about Morykwas' possible bias. Secondly, and more importantly the statement can be considered discriminatory only by use of inferences. The court finds that Morykwas has not produced direct evidence of gender discrimination related to his failure to be promoted.

In the absence of any statistical evidence, Morykwas' allegation that he was not offered the position of technical specialist because of a gender motivated animus is properly analyzed under the well-established *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas*, supra; *Texas Dep't of Cmty Affairs*, *supra*. The burden-shifting analysis of the *McDonnell Douglas* framework requires the court to consider a three-step process. First, the plaintiff must establish a prima facie case of employment discrimination. A successful prima facie case creates a presumption of discrimination and triggers the second step of the burden-shifting analysis which requires the employer to rebut the presumption of discrimination by demonstrating a legitimate, nondiscriminatory reason for the employment decision. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). The burden shifts back to the plaintiff for the final step in the analysis where, to avoid summary judgment, the plaintiff must rebut the employer's proffered reasons and demonstrate that a genuine issue of fact exists about whether its proffered reason is a pretext for gender discrimination. *See McDonnell Douglas*, 411 U.S. at 802-04.

7

To establish a prima facie failure-to-hire claim, the plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position and applied for it; (3) he was not considered for the position despite his qualifications; and (4) equally or less qualified individuals outside of his protected class were considered or hired for the position. *See Underwood v. Perry County Comm'n*, 431 F.3d 788 (11th Cir. 2005); *Welborn v. Reynolds Metals Co.*, 810 F.2d 1026, 1028 (11th Cir. 1987). *See also Arrington v. Cobb County*, 139 F.3d 865, 873 (11th Cir. 1998) (racial discrimination).  It is undisputed that Morykwas, a male, is a member of a protected class who applied for the technical specialist position, that he was rejected in spite of his qualifications, and that he lost the position to Simmons, a female.  The parties, however, dispute whether Simmons was equally or less qualified than Morykwas.  Nonetheless, this court need not decide this issue at this stage of its analysis.

Even assuming that Morykwas has sufficiently demonstrated a prima facie case of gender discrimination, it is clear that the defendant has articulated a legitimate, nondiscriminatory reason for failing to hire Morykwas.  "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997).  "'The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting

8

*Burdine*, 450 U.S. at 254-55).  This intermediate burden is "exceedingly light."  *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997);  *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).  Major Taylor asserts that she did not select Morykwas for the position because she considered Simmons to be the most qualified applicant.  (Doc. 21-3, Major Taylor's Dep., pp. 66-67.)  In addition, Major Taylor asserts Simmons "stood out" because she had the highest interview score, more supervisory experience, and an Associate's Degree in Nursing. (*Id.*, pp. 66, 70-72.)  Consequently, the defendant has offered a legitimate, nondiscriminatory reason for not selecting Morykwas for the position.

Having determined that the defendant presented evidence of a legitimate, non-discriminatory reason for rejecting Morykwas, the court now turns to the third prong of the *McDonnell Douglas* test.  *McDonnell Douglas*, 411 U.S. at 802.  Morykwas must establish that the defendant's justification for his failure to select him for the technical specialist position was a pretext for discrimination based on his gender.  Morykwas "'may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

Morykwas first argues that Major Taylor's articulated reasons are merely a pretext for discrimination because no reasonable person would have chosen Simmons over him for the technical specialist position.  When attempting to rebut the defendant's proffered reason for

hiring Simmons, Morykwas must "show that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks*, 446 F.3d at 1163 (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004.)

In this case, Morykwas has failed to meet his burden under *Cooper* to show that the disparities between his qualifications and Simmons' qualifications were "so severe that *no* reasonable person could have chosen [Simmons] over [him]." *Brooks*, 446 F.3d at 1163. In his response to the defendant's motion for summary judgment, Morykwas argues that he should have been selected for the position because the evidentiary materials indicate that he had at least six more years of experience as a medical technologist. (Doc. No. 24, p. 4.) Morykwas asserts that he informed Major Taylor that he had additional educational and employment experience which was not specified in his résumé. For instance, Morykwas contends that he and Major Taylor discussed several supervisory and medical jobs he had between the time he received his Biology and Chemistry degrees in 1972 and his Medical Technology degree in 1990. During Morykwas' deposition, Morykwas testified that, between 1984 and 1990, he completed a few science courses at the University of South Alabama and that he had several part-time jobs, including construction work. (Morykwas' Dep. P. 76.) Morykwas acknowledged that he "never had a real steady job." (Morykwas' Dep., p. 76.) In her deposition, Major Taylor indicated that she and Morykwas only

discussed the prior work experience specified in Morykwas' résumé. (Major Taylor's Dep., p. 74-75, 79, 83, 87.) Although Morykwas and the defendant dispute whether Major Taylor was informed of Morykwas' additional employment history, the court concludes that Morykwas has failed to demonstrate that the differences between his and Simmons' qualifications were of "such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Simmons] over the plaintiff." *Cooper*, *supra*. Morykwas alleges that he has twenty-four years of work experience, including several years of supervisory experience, and more college degrees than Simmons[4]; however, it is undisputed that Simmons has eighteen years of experience as a medical technologist, including five years' experience as a technical supervisor, and that she has degrees in both Nursing and Medical Technology. (Doc. No. 21-4, Ex. A, p. 10-11; Doc. No. 24-1, p. 9, 11.) Consequently, Morykwas has failed to set forth specific facts demonstrating that the differences between his and Simmons' qualifications were so severe that no reasonable person would have chosen to hire Simmons for the medical technologist position.

Morykwas also argues that Major Taylor's proffered explanation is "a sham and false." (Doc. No. 24-1, p. 10.) Specifically, he asserts that a memorandum prepared by Major Taylor, which was not provided to EEO officials during the investigation, "is by itself proof of pretext, proof of a cover up." (*Id*., p. 11.) The April 4, 2003, memorandum states:

---

[4] Morykwas has a Bachelor of Science in Medical Technology, Biology, and Chemistry. (Doc. No. 21-4, Ex. B, p. 13.) In addition, he has completed some course work toward a masters degree. (Doc. No. 24-1, p. 10.)

11

There were several warning signs during the interview to suggest that Mr. Morykwas would not enhance the overall quality of laboratory services here at Maxwell.

- In response to me informing Mr. Morykwas that I'd have a position open in June, he informed me that if he didn't get this position he'd probably leave the local area. He went on to explain why and in his effort, he showed total disrespect not only for current laboratory management over at VA, but the entire system that employed him for nine years.

- In his opinion, he should have been selected to fill the current VA Laboratory Manager GS-13 position, his reason, "the person currently holding the position does not meet the qualifications with only a High School diploma."

- He also asked me, if I thought I would be intimidated working with him, giving the fact that he served in the AF as an AF officer.

- To be honest, my overall impression of Mr. Morykwas was one of a disgruntle[d], belligerent, negative employer[5] "wronged by the world" who would do no more than sew seeds of discord throughout the laboratory. I thought Applicant Two (be it male, female, black, white) had more to offer our facility, due to her years of experience in the field; diversity in various roles and how she handled herself during my interview.

(Doc. No. 24-3.)

Morykwas contends that the memorandum is evidence of pretext because Major

Taylor's list of "warning signs" were different from her responses to EEO officials during

---

[5] During her deposition, Major Taylor indicated that she intended to use the term "employee," instead of the term "employer."  (Major Taylor's Dep., p. 60.)

12

the investigation.  The memorandum merely lists Major Taylor's reasons for having an

unfavorable impression of Morykwas and her reasons for selecting Simmons for the position.

However, nothing in the memorandum indicates that Major Taylor's articulated reasons as

set forth in the EEO proceedings and in her brief to this court regarding her decision to hire

Simmons based on her experience and diverse background are unworthy of credence.

Morykwas also argues that Major Taylor's assertion that she chose Simmons based

on her technical supervisory experience should not be believed because the technical

specialist position is not a supervisory position.  First, the evidentiary materials indicate that

the job description for a medical technologist included a section explaining the supervisory

duties of the position.[6]  (Doc. No. 24, Part 2, EEO file, p. 94.)  Secondly, even assuming the

medical technologist position did not require supervisory skills, Simmons' experience as a

technical supervisor exceeded requirements for the medical technologist position.  Morykwas

---

[6] The description states as follows:

Factor 2.  Supervisory Controls        Level 2-4        450 Points

The supervisor makes assignments by setting overall objectives and
approach to be taken. The technologist and supervisor then may
confer on deadlines and priorities.  As Technical Supervisor, the
incumbent plans and carries out the assignments independently,
develops the methods to be used, coordinates the work with others
and keeps the supervisor informed of potential problems.  Completed
work is reviewed for compliance with established policies and
instructions for the adequacy in meeting requirements and assuring
reliability of data.

(Doc. No. 24, Part 2, EEO file, p. 94.)

fails to set forth specific facts demonstrating that Major Taylor's articulated reason for hiring Simmons based on her supervisory experience was unworthy of belief.  Consequently, Morykwas has failed to present a genuine issue of material fact demonstrating that Major Taylor's consideration of Simmons' supervisory experience was a pretext for gender discrimination.

In addition, Morykwas argues that Major Taylor's assertion that she also selected Simmons based on her training as a nurse should not be believed because a nursing degree is not required for the position.  Major Taylor stated that she believed a nursing degree would enable Simmons to communicate well with doctors and nurses who submitted samples for laboratory testing.  (Doc. No. 21-4, Attach. C, Major Taylor's Affid., p. 6; Doc. 21-3, Attach. B, Major Taylor's Dep., p. 72.)   Morykwas' mere opinion that a nursing degree is unnecessary for the position fails to establish that the defendant's proffered reason is unworthy of credence.

The bottom line is that Morykwas has failed to adduce evidence sufficient to show that any "disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face.' " *Denny v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001).  Even after construing the evidence in the light most favorable to the plaintiff, the court is compelled to conclude that Morykwas has failed to present evidence raising a genuine issue of fact about whether the defendant's reason for failing to hire him was a pretext for gender discrimination.

14

**IV.  CONCLUSION**

For the reasons as stated, the court concludes that the defendant's motion for summary

judgment is due to be granted.

A separate order will be entered.

Done this 4th day of January, 2007.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE